is Jose Melgas Orellana versus Attorney General number 192404. And we'll hear from Petitioner's Counsel first and wonder how we should address your client's name. Is it Melgas Orellana? Is it Orellana? That's correct, Your Honor. You can come up to the podium. That's good. Is it Melgar or Melgas? I believe it's Melgar, Your Honor. Melgar, Orellana. Yes. Okay. All right. You may proceed. Thank you, Your Honor. May it please the Court. Stephen Hildebrand, on behalf of Oscar Barbarosa, who is on the brief today, on behalf of Mr. Melgas Orellana, it's his petition for review before this Court from the Board of Immigration Appeals. This case came before the Court ultimately in a withholding of removal posture. He entered the United States in approximately 2005, initially. There's an in absentia order of removal for a failure to appear at immigration court from around that time. There's a subsequent arrest due to a minor criminal case in the state of New Jersey in 2008, at which time he was re-detained by ICE authorities, removed on the basis of the prior in absentia order that had been previously entered. He returned to his native El Salvador soon after returning. I think we get all that. Very well, Your Honor. Back to this point. What do you make of the record and the consideration both of the IJ and the BIA of this statement? This is a reading from the IJ's oral decision. There is insufficient information provided in the record that would establish the gangs targeted the respondent because he was gay. Is that an accurate statement of the record? I don't believe it is, Your Honor. Tell me why not. He had significant testimony going back from the first incidents, the first problems he had with the gang, first starting with MS-13 in terms of when they threatened him. These were not necessarily ordinary threats. These threats were specifically charged in a way that referenced his homosexuality. Well, they were sexually charged. Yes. And also the violence that was committed against him was one of sexual assault, which would be particularly looking in general at El Salvador, less common that men or straight men would be the victims of sexual assault. I was looking for that, and I didn't see anything expressed that straight men aren't attacked. So what's the evidence you point to that allows us to infer that, yes, in fact, this is something he's suffering, that it's gay men who suffer and not straight men? Yes, Your Honor. I think on the record before the court that is a little bit of a sticky issue without expert testimony to opine on that. You have his testimony in addition. In addition, certainly there's no question from the record that was presented that there is great violence in general against everyone in El Salvador to a rate much higher than we're accustomed to here. And I think that's what the BIA and IJ, the point they were making, that, yes, it's sort of different in type, unfortunately. And we're not diminishing in any way what happened to your client. I mean, it's terrible. But what about the country reports? There's several references in the country reports about how gays are targeted by MS-13. That's correct, Your Honor. So there is something in the record. There is something in the record. In addition, we have his testimony describing the general conditions and discrimination faced by gay men, a failure by the police to take reports of crimes against gay people as seriously as they might be against others. Okay. It's going to depend in part on what your claim is here. And I think your brief is not exactly crisp and clear on what the claim is, what the persecution is. Is the persecution here the extortion for rent? Because the IJ and BIA are finding that everybody gets extorted. And Gonzalo Posada said, yeah, maybe sometimes gay people are subject to these threats. But if it's fundamentally an extortion threat, lots of people. It's an awful thing that happens. It's horrible not minimizing it. But it's not clear that the extortion is because of or on account of his sexuality, as opposed to something that's suffered more generally. Yes, Your Honor. And certainly extortion is a widely used means of gain control and revenue raising for the gangs. So is that your fundamental claim here? Ultimately, it's not, Your Honor. It's the attacks going back for a long period of time that were specifically targeted on him as a gay man. And moreover, looking specifically at the extortion, it's his testimony that the rate at which he was extorted for the time period was considerably higher than those of civilly situated people. What do you make of this exchange? The IJ asks the petitioner, your client, why did they target you, his response, for being gay? They're our country. We are very much discriminated against, all gays. Fast forward, they find him credible. Yes, Your Honor. What do you make of that exchange and the credibility determination? I believe that credibility determination goes that the court did find him credible in general in his testimony. But specifically that gay people are targeted. Although the court did not believe that there was specific targeting of gay individuals because of their sexual orientation that would cut dramatically against his credibility. I think it would be difficult for the judge to not agree with that point and then turn around and find him credible in general without specifically carving out that in the opinion. But here's the problem. The IJ and BIA analyzed the extortion claims, and they made findings specifically about extortion. And so what I'm wondering is, is your claim fundamentally an extortion claim here? I don't believe it is, Your Honor. Then what is it? This is a claim on the basis of sexual orientation and perceived sexual orientation by others. But the persecution that satisfies the standard for withholding removal is your claim that the relevant persecution here, you've pleaded it as extortion, as the persecution, or the threats that come with the extortion. I would say that more specifically, the way I would put it, and I did not represent him below, Your Honor, is that I would put that it is disproportionate extortion on the basis of his sexual orientation as well as sexual assaults and rape. Okay. Let's say we think that the sexual assault claims are stronger than the extortion ones. I understand your argument, but the IJ and BIA took on the extortion issue head on. Yes. They don't seem, we'll ask your friend on the other side, they don't seem to have taken the sexual assault issue head on. So that's better for you. But the question is, was this one preserved? Was it argued to the IJ and BIA as sexual assault being another ground for relief apart from the extorting at higher rent, which is an argument you keep pushing every time we raise this. Was the sexual assault on its own preserved before the IJ and the board? I believe it was preserved, Your Honor, on the basis of the claims being in his sexual orientation and perceived sexual orientation. Can you point us to the best things in the record that preserved this as a distinct ground for relief? If you go to his testimony that goes back in detail to his events, including as a child, from the sexual assault at the hands of MS-13, later moves to a town, lives with a family. He testifies to these things. Yes, Your Honor. He testifies to a pattern. But in terms of the arguments that counsel made below, was it framed up as this at all? I think it certainly could have been framed in more detail in hindsight, Your Honor. But I think that it was sufficient to preserve it. Where? I think it was sufficient to preserve it when he's arguing about sexual orientation in general. Where in the record? I don't have a specific record for you, Your Honor. He does submit quite a few affidavits corroborating his testimony with respect to the sexual assault, doesn't he? That's correct, Your Honor. He does submit a good bit of evidence with respect to the country conditions. Yes, Your Honor. Some of them are a little more nebulous, talking about the Northern Triangle as opposed to specifically El Salvador. But there's a good bit of reference to the MS-13 and the M-18 groups, correct? Yes, that's correct. I think in the record submitted that it's sufficient on those bases, as well as the testimony that was elicited from responded. However, in actual argument before the court, I think that in hindsight, 2020, a more forthcoming and detailed front on that end would be fruitful in hindsight. You've got a withholding claim and a cat claim here. That's correct, Your Honor. And on withholding, and this is going to depend on persecution on cat, it's going to depend on torture, whether this was torture, but also the probability. And the board found that it was speculative that anyone was going to torture him. So what's your response to that speculative finding? It would only knock out the cat. It wasn't in the context of withholding. But was there a factual finding that underpinned this before the board? It wasn't found in the IJ's decision. So what do we do with that? It would be dispositive. If it were properly reasoned and founded, it would be dispositive of the cat claim, whether or not this was on account of sexual orientation or anything else. If it's not 51%, cat is out of the picture. So what's your response? My response is that describing the claim as speculative does not fundamentally address the legal question before the Board of Immigration Appeals. As Your Honor correctly pointed out, cat turns on perhaps a difficult-to-implement-in-practicality assumption of whether something is more likely than not to happen. Where did your client put in evidence that rose to the more-likely-than-not standard? You have continued threats upon his return to El Salvador after his removal from the United States. You have the affidavit of his wife who described the continued assault that she had news of that she heard of. In addition, you previously have the assault at his hometown that he moved three hours away in an attempt to avoid this for internal relocation as a very young man. And you had another assault at the hands of a different organization. So I think if you look at the totality of those issues over a long stretch of time, you have targeting, again, on the same grounds, on the basis of his sexual orientation. Do you have any more, Counsel? Because I had sort of a final question, just maybe housekeeping maybe is more than that. But any update on his U-918 petition? It is still pending, as I'm sure the Court is aware. The wait times is there's a cap per year. Every year it gets considerably longer. So the best of – Mr. Barbour is handling that. I'm not involved in that aspect at all. The standing for him today is he's unavailable. He's out of the country. However, it's my understanding when I discussed that with him that it is still pending, to the best of my knowledge, Your Honor. All right. Well, obviously, you'll let us know if the circumstances change, right? Certainly, Your Honor. That would potentially open an avenue of relief that would render this proceeding moot. Right. Okay. Thank you. Nothing further. Thank you. Thank you, Counsel. Good morning, Your Honors. I'm Ian Siff for the Attorney General. The Court should deny the petition for review. The petitioner failed to demonstrate that substantial evidence supports the agency's determination that the petitioner failed to meet his burden of proof for withholding. Do you think the agency's opinion, which consisted of about five paragraphs, right, did it really consider the record? It made no reference to the country reports. It made no reference to the affidavits. Is that a fair consideration of the record? Well, Your Honor, I will admit that the decision is not as thorough as I think we would like in terms of making it. Well, you'd agree there's no reference whatsoever to the country reports or to the affidavits? Well, that's correct, Your Honor. I would say that there is sufficient determinations and analysis by the Board in order for this Court to adjudicate the petition for review, give us enough for review, and also there is a presumption that the— What are we reviewing if they don't review? I mean, we're reviewing their conclusions. We're not reviewing their analysis. What is it we're reviewing? Well, there is a presumption that the agency did—a presumption of regularity that the agency did take a look at the evidence before in considering his application and in denying it here. All right. But then there's explanation and there's explanation. If the I.J. had had a thorough discussion, probably briefer consideration by the B.I.A. might be appropriate. But, for example, we don't have references in the I.J. or B.I.A. to dealing with the sexual assault issues. We have discussion that seems entirely focused on the extortion stuff. And then we have on the Catt claim, for the first time, the B.I.A. makes a speculative finding, but it's not piggybacking on anything in the I.J.'s decision. So you're asking a lot for the presumption of regularity where there's just no discussion. You know, we expect some minimal level of articulation. If we're seriously concerned about whether the board even considered this stuff, isn't the proper course to send it back, not necessarily to grant, but at least for the court for them to openly advert to and consider country conditions, report, probability, those issues? Because I don't see it here. Your Honor, if this court does feel that there's insufficient basis to review it, then I understand why you would want to send it back. I will say that- Is it really your position that there's a sufficient basis for us to review this opinion? I think we have the conclusions of the agency. There was a hearing held. The petitioner's claim was presented to the immigration judge. We have their conclusions. Agreed. We have their conclusions, but nothing to back up their conclusions. How do you review a conclusion without understanding what led to that conclusion? I mean, the agency considered the claim here. They did assess the fact that he claimed that he was persecuted. If you look at the board's, I believe, the second paragraph of his decision, it lays out his claim that he was subjected to sexual harassment, he was subjected to extortionate demands by gangs in 2005 and 2009. Let's look at the way they put it. I think the most charitable reading is the board and the IJ seemed to understand the claim as a claim fundamentally of extortion. They took it on. They said they felt sorry for him. You know, maybe there's some question about whether more or less was extorted from him, but under Gonzalo's Posadas, maybe that's not enough because the harm being suffered is extortion everyone gets. So if that's right, then this comes down to an issue of were the IJ and board presented with a distinct sexual assault ground for relief that they ignored, or were they properly ruling because the extortion was the only thing that was before them? What's your position on whether, in fact, there was enough here to preserve a sexual assault claim motivated by his sexual orientation? Well, I think the way that we looked at it is the fact that what were the instigating events that led to the individual petitioner fleeing to the United States? It was a 2005 extortion demand. That's why he said he fled for his life. And then he was returned and fled once more after. He just got back. He was, again, extorted. So I think the claim is, and the agency correctly did perceive it as one of extortion and claim. But is it preserved? Is the sexual assault preserved on its own as sort of a stand-alone claim? I'm not sure. I don't see that the – he did address it during his hearing. He was claiming it, and he did identify his – and the agency did recognize that his sexual orientation was the basis for his claim. He said, why did they target you for being gay? That's what he says. He says, they targeted me for being gay. He may have. And then they found him credible. That might be a situation – but then that turns to kind of a sufficiency of evidence. He may have said so, but then it's the agency's determination whether or not it was that the motivation of the game. But how do we know that if there's no reference to all the supporting documentation with respect to that's why he was targeted? Well, you had the affidavits, including one from his wife, and you had a lot of country reports that are not referenced by the BIA. You're right. I'll just point to the fact that the agency – the board specifically said the officer provided insufficient evidence to establish that a central reason for the gangs targeting him was his sexual orientation. So that's because the conclusion is insufficient. I understand that, Your Honor. It might be that that's enough on the extortion claim, right? Because, again, the testimony is not entirely clear. If the claim is, I was extorted because I was gay, their reasoning seems to go on and say, yeah, you were extorted, but everybody is extorted. But if, as Judge Chigueras asked, if it is properly before us that sexual assault, not just motive of a social orientation, but the sexual assault is a distinct kind of harm being suffered because he's gay, and if we can infer from the evidence that straight men are not being assaulted the same way or same rate, how can we defer to that? I mean, if we're not sure, don't we have to send it back? I guess so, Your Honor. But the petitioner presented his claim before the agency. He presented – he provided his testimony. He indicated that he was gay. He indicated that he was targeted for being gay. The agency simply disagreed. And he can point to evidence that supports his claim, but that's not the standard here. The standard is you have to show that the record compels such a conclusion, compels the fact that a central reason was. If it was addressed properly, then the question is, that's a substantive ground for upholding it. But I think this is more of a procedural attack. If the agency failed to consider the evidence or didn't offer the minimal reason and explanation, if we're not sure they considered it, then we don't get to the substantial evidence. Correct? I guess I'll point again to what kind of – the fact that the agency did say that there was insufficient evidence to show that he met that – that he established that. That might give us enough – that gives the court enough to say that the agency did consider that claim, the sexually inpatient claim, and the claims related to his experiences as a gay man in El Salvador and the mistreatment he endured. But again, turning to the fact that I do think that we do – looking at the standard of view here, under substantial evidence, that in 2005 and 2009, the two instigating events that resulted in him fleeing were clear-cut extortion demands by the agency and by the gangs. Because he was gay. I disagree with that, Your Honor. That's what he testified to. That's what he testified to. That goes to sufficiency evidence. The agency disagreed with him. The agency said, well, 2009, that they came to you and they basically demanded money. No mention of the sexual orientation. They were doing what gangs in El Salvador have done for years, and unfortunately they were seeking to enrich themselves through means of violence. But the criminal report suggests it's an even more difficult and exacerbated condition for gay folks. Well, I understand that, Your Honor. But looking at his specific situation, the fact that in 2009 there was no mention of sexual orientation, and in 2005 when he was – there was a threat. They said they demanded – they came to his home, demanded his money, and threatened to rape and kill him. The sexual – his sexual orientation there was incidental to their ultimate purpose, was to gain money. They were threatening sexual violence for what purpose? To gain money. And that's, I think, Judge Vivas referencing Gonzalez-Posadas. That's kind of similar. They were using their violence and their threats in order to enrich themselves, which is the gang's motivation here, which in and of itself would not be a basis for withholding of removal. Any further questions, Your Honor? There's none. Thank you, counsel. Thank you very much for your time. Thank you. Did you reserve time, counsel? Did he reserve time? Okay. All right. Thank you. We'll take the case under advisement and thank counsel for their excellent briefing and argument. I'll have the clerk adjourn the court, and we would like to just greet you more informally at sidebar. Thank you.